UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATE OF AMERICA | ) |  |
|---|---|---|
|  | ) |  |
| v. | ) | Case No. 3:14-CR-026 JD |
|  | ) |  |
| ANDRE ALLAN FORBES | ) |  |

## OPINION AND ORDER

Now before the Court are two motions by the defendant and an oral motion by the government. This case previously reached the morning of trial before the Court granted a continuance at the defendant's request due to the government's recent disclosure of discovery. Subsequently, the government superseded the indictment, making two changes. First, it enlarged the time-frame encompassed by the 924(c) count, and second, it added a witness tampering count. The defendant filed two motions in response, the first of which sought to dismiss the superseding indictment, at least as to the 924(c) count, and the second of which requested a bill of particulars. At a subsequent pretrial hearing, the government orally moved to amend the indictment to correct a typographical error in the dates of the witness tampering count. The Court addresses each motion in turn, and for the following reasons, the Court denies the defendant's motion to dismiss, grants the government's motion to amend, and takes the defendant's motion for a bill of particulars under advisement.

**A.    Mr. Forbes' Motion to Dismiss**

Mr. Forbes first seeks to dismiss the superseding indictment, at least as it relates to the 924(c) count, as a sanction for a discovery violation and because the superseding indictment was the product of a vindictive prosecution. By way of background, the original indictment charged Mr. Forbes with seven counts. Count 1 alleged that Mr. Forbes distributed cocaine on or about September 10, 2013; Counts 2–5 alleged that Mr. Forbes distributed crack cocaine on four

separate dates in October 2013; Count 6 alleged that Mr. Forbes possessed a firearm in furtherance of a drug trafficking crime in or around October 2013; and Count 7 alleged that Mr. Forbes possessed a firearm in or around October 2013, despite having previously been convicted of a felony. After several initial continuances, trial was set to begin on August 25, 2014.

During the week prior to trial, while interviewing witnesses in preparation for trial, the government learned that after Mr. Forbes' arrest in this matter, he asked an individual to claim that the gun found in his living area was hers, not his. The government believed that this evidence should be admitted against Mr. Forbes because it demonstrated his consciousness of guilt. It thus filed a trial brief on August 20, 2014, outlining relevant law on the admissibility of conscious-of-guilt evidence, and it set about tracking down recordings of the phone calls to document those conversations. Because Mr. Forbes was detained, the phone calls during which he made these statements were recorded, so the government secured about 12 hours of phone calls from the jail and began reviewing them. It also attempted to arrange for defense counsel to pick up a copy of the recordings in the days before trial, but was unable to actually deliver the recordings to counsel until the morning of trial.

Also during its trial preparation, the government discovered a recording of an interview Mr. Forbes had given with law enforcement officers in 2009 in which he stated that a drug trafficker might possess a firearm for protection. The government disclosed this interview to defense counsel on August 21, 2014, along with an outline of the testimony by which it intended to introduce this evidence. Because of the government's eleventh-hour disclosure of the 2009 interview, the alleged witness tampering, and the recorded phone calls, Mr. Forbes requested a continuance to allow him to review the evidence and investigate possible responses. The Court heard argument on the motion on August 25, 2014, which was set to be the first day of trial. The

government did not object to the continuance and conceded that it was appropriate under the circumstances, so the Court granted Mr. Forbes' motion and reset trial for October 20, 2014.

During the August 25, 2014 hearing at which it continued the trial, and at other prior pretrial conferences, the Court raised several potential evidentiary issues in an effort to minimize interruptions and delay during trial. One of those issues was whether the consciousness of guilt evidence should still be admitted given that Mr. Forbes no longer contested, and in fact was willing to stipulate to, his possession of the gun, which he had allegedly asked the witness to lie about. *See United States v. Calabrese*, 572 F.3d 362, 268 (7th Cir. 2009) (noting that the possibility that the defendant was trying to influence witness testimony as to other crimes not at issue made the consciousness of guilt evidence "incrementally less relevant," as his consciousness of guilt may have only been as to those other crimes). The Court also raised a question about the dates in the indictment in the 924(c) count. The indictment charged one drug transaction in September 2013 and four transactions in October 2013, but the 924(c) count was only alleged to have occurred in or around October 2013, suggesting the government may have meant to exclude the September 2013 transaction as a basis of the 924(c) count. However, the government also intended to introduce statements Mr. Forbes made during the September 2013 transaction in support of the 924(c) count, so the Court inquired as to whether that evidence would be admissible and on what ground. After discussing the issue with counsel for the government, the Court asked defense counsel for his position. Defense counsel stated that he did not concede the admissibility of the September statements as to the 924(c) count, and that he intended to object at trial as to the admissibility of that evidence. However, given the continuance, the Court did not make any rulings on these matters at that time.

After the trial was continued, the government returned to the grand jury and superseded the indictment to attempt to moot these evidentiary concerns. It modified the 924(c) count to allege that it took place "in or around September – October 2013," apparently in an effort to cure the latter concern. It also added a witness tampering charge, Count 8, alleging that Mr. Forbes attempted to corruptly persuade another person and engaged in misleading conduct toward another person with the intent to influence the testimony of another person in an official proceeding, which provided an independent basis for admitting the evidence that Mr. Forbes asked an individual to lie about his possession of the gun.

These modifications prompted Mr. Forbes' motion to dismiss the indictment. Mr. Forbes argues that had trial gone forth as scheduled on August 25, 2014, the government would have been unable to secure a superseding indictment and the evidence at issue would have been excluded. Because the reason for the continuance was the government's own conduct, namely its production of evidence on the eve of trial, Mr. Forbes argues that the Court should not allow those benefits to accrue to the government and should dismiss the 924(c) count of the superseding indictment as a sanction for the government's violation of its discovery obligations.

Under Rule 16 of the Federal Rules of Criminal Procedure, the government has an obligation to disclose certain materials to the defendant, including a defendant's statement in response to interrogation by law enforcement and any recorded statements by the defendant. Fed. R. Crim. P. 16(a). This obligation continues through to the conclusion of trial: "A party who discovers additional evidence or material before or during trial must promptly disclose its existence to the other party." Fed. R. Crim. P. 16(c). Where a party fails to comply with its discovery obligations, a Court may: "(A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a

continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2). In deciding which among the spectrum of available sanctions to impose for a discovery violation, a court "should take into account whether the government acted in bad faith and whether any unfair prejudice to the defendant can be cured by a less severe alternative." *United States v. Herrera*, 366 F. App'x 674, 676 (7th Cir. 2010).

Here, Mr. Forbes' request to dismiss the superseding indictment is not well-taken. The only prejudice Mr. Forbes cites in support of his motion is the government's ability to supersede the indictment due to the continuance, but that continuance was not caused by a discovery violation. A primary reason for granting the continuance was Mr. Forbes' need to review the 12 hours of recorded phone calls that the government had produced on the morning of trial. However, the government had itself just received those recordings in the preceding days, and it promptly disclosed their existence to defense counsel and attempted to make arrangements to produce them. Although the Court had issued a discovery order on April 21, 2014 ordering the government to provide any such items within 10 days, the government did not yet possess these recordings at that time, and thus did not violate that order. Since the government later discovered this additional evidence, its duty was to "promptly disclose its existence" to Mr. Forbes, and it did so. Fed. R. Crim. P. 16(c). Thus, the continuance upon which Mr. Forbes' argument of prejudice is based was not caused by a discovery violation, so sanctions under Rule 16 are not warranted.

Second, even if there was a discovery violation, Mr. Forbes did not suffer any cognizable prejudice. Initially, Mr. Forbes argues that because the government was able to supersede the indictment, it will be able to introduce evidence that would have been excluded had trial

5

commenced under the original indictment. It is not certain, however, that the superseding indictment actually affected the admissibility of any of the government's evidence, as the Court did not make any evidentiary rulings as to the first indictment, nor has it done so yet as to the superseding indictment. More importantly, though, having to face a superseding indictment—even one that adds charges or expands the possible bases for conviction—does not establish the sort of prejudice that could justify dismissal of the indictment or exclusion of evidence.

Although this appears to be a unique circumstance in the context of alleged discovery violations, the Seventh Circuit has often rejected similar arguments in the speedy trial context: "[W]e have repeatedly stated that the fact that the government increased the number of crimes a defendant is charged with does not give rise to prejudice." *United States v. Taylor*, 196 F.3d 854, 862 (7th Cir. 1999); *see also United States v. Gearhart*, 576 F.3d 459, 463 (7th Cir. 2009) ("Although Gearhart argues that he was prejudiced because the government was able to strengthen its case against him during the delay between indictment and trial, this fact is not relevant to the prejudice analysis."); *United States v. Salerno*, 108 F.3d 730, 738 (7th Cir. 1997) (rejecting the defendant's argument that the delay prejudiced him because it "permitted the government to hone its trial strategies and perfect its evidence"). As the Seventh Circuit explained in *United States v. Tedesco*,

> A continuance granted to allow the Government to obtain a witness does not cause a defendant "prejudice" in the manner meant by the term in this context. Obviously [the witness'] appearance worked to the disadvantage of [the defendant], but so did the introduction of other incriminating evidence. "Prejudice" is not caused by allowing the Government properly to strengthen its case, but rather by delays intended to hamper defendant's ability to present his defense. A defendant is not entitled to, and justice is ill-served by, a trial during which the Government is not able to present relevant evidence.

726 F.2d 1216, 1221 (7th Cir. 1984) (citations omitted).

Here, Mr. Forbes was apparently pursuing a strategy under which he intended to object to certain evidence at trial, at which point the government could not cure the deficiency, and to hope that the September 10 evidence would be excluded. Ultimately, that strategy did not play out quite how Mr. Forbes planned, and the intervening delay allowed the government to attempt to circumvent this objection. Mr. Forbes may have thus been prejudiced in the narrow sense that the government has attempted to strengthen its case since the August 25, 2014 trial date, but that does not establish the sort of prejudice that is actionable in this context, meaning prejudice that hampers his ability to present his defense. The only prejudice of that nature that Mr. Forbes suffered through the late disclosure of this discovery was the inability to review and investigate the late-disclosed materials prior to trial, but that prejudice was entirely cured by the continuance, so no further sanctions are warranted.

Finally, the government's complete lack of bad faith or willful misconduct forecloses the type of relief Mr. Forbes seeks here. Dismissal of an indictment is the most extreme sanction available, and is typically reserved for instances of deliberate misconduct by a prosecutor. *See Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 255 n.7 (3d Cir. 2005) ("Because a new trial cures completely any prejudice to a defendant from a *Brady* violation, prejudice alone cannot justify dismissal. For similar reasons, new evidence discovered after the close of trial, if from a neutral source, results only in a new trial. Only where there is willful misconduct will deterrence justify dismissal with prejudice."). Even merely excluding evidence, as opposed to dismissing an indictment, "is inappropriate where 'the trial court finds that the government's violation did not result from its bad faith and a less drastic remedy (such as a continuance) will mitigate any unfair prejudice." *United States v. De La Rosa*, 196 F.3d 712, 717 (7th Cir. 1999) (internal alteration omitted); *see Herrera*, 366 F. App'x at 676–77 (overturning an order excluding evidence where

there was no showing "of either bad faith or reckless foot-dragging by the government" and a continuance would have cured any prejudice). Here, as Mr. Forbes acknowledges, there is no indication whatsoever that the government has engaged in any sort of deliberate misconduct or that it has acted in bad faith. To the contrary, the government has been quite forthcoming with its evidence and strategies in this matter, and the Court has no reason to suspect that the government behaved differently as to these discovery materials. Thus, the Court concludes that neither dismissal nor any other sanction is warranted as a result of the government's alleged discovery violations, and rejects that basis for Mr. Forbes' motion.

Mr. Forbes next argues that the superseding indictment should be dismissed as the product of a vindictive prosecution since it was brought in retaliation for his refusal to accept a plea offer. A defendant cannot be punished for exercising a constitutional or statutory right, so an indictment can be dismissed if a prosecutor brings the charge in retaliation for the defendant's exercising of such rights. *United States v. Goodwin*, 457 U.S. 368 (1982); *Bordenkircher v. Hayes*, 434 U.S. 357 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."). Mr. Forbes' argument fails, though, because it is devoid of factual support. As to the 924(c) count, the superseding indictment did not subject Mr. Forbes to any additional charges or penalties, it simply corrected a drafting error as to the date. In this respect, it was no more vindictive to supersede the indictment that it would have been for the government to argue at trial that the original indictment encompassed the September 10 transaction or that the evidence should come in anyway.

Even if the government had added this count, though, (as it did with the witness tampering count, to which Mr. Forbes does not object), it would still be appropriate. As the Supreme Court has recognized on multiple occasions, prosecutors are entitled to take such

8

actions as part of the plea bargaining process, and this sequence of events does not support an inference of vindictiveness:

> An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.

*Goodwin*, 457 U.S. at 380; *see United States v. Falcon*, 347 F.3d 1000, 1005 (7th Cir. 2003) (noting that "a prosecutor's pretrial decisions, including the choice to seek increased or additional charges, are presumed valid").

In *Bordenkircher*, the prosecutor explicitly told the defendant during plea negotiations that if the defendant did not plead guilty, he would return to the grand jury to obtain an additional charge that would significantly increase the defendant's potential punishment. 434 U.S. at 360–61. The defendant did not plead guilty, and the prosecutor obtained the additional charge as promised. *Id.* The Supreme Court held that this procedure was perfectly acceptable, as while it presented the defendant with a choice between two unpleasant alternatives and made it less desirable for him to exercise his right to trial, it did not violate his rights. *Id.* at 365. The same sequence played out here: the government notified Mr. Forbes that if he did not accept the plea offer, it would supersede the indictment, and when Mr. Forbes declined the plea, the government followed through with its promise. This presented Mr. Forbes with an unenviable choice, but was not vindictive or retaliatory.

Finally, the timing of the superseding indictment shows that its purpose was not to punish Mr. Forbes, but to attempt to moot evidentiary issues as to the 924(c) count. The Court raised those issues at the August 25, 2014 hearing, and the government resolved them by superseding the indictment at the very next grand jury sitting. Had Mr. Forbes pled guilty first, the

government would not have had to seek a superseding indictment, but that does not show that it sought the superseding indictment in retaliation for Mr. Forbes' decision to proceed to trial, rather than for its legitimate ends. And since there is no other indication that the government is motivated by any form of prosecutorial animus, Mr. Forbes has failed to meet his burden of showing that the superseding indictment was vindictive. *Falcon*, 347 F.3d at 1005 ("To raise a reasonable doubt as to the propriety of charges added before trial, a defendant 'must affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication.'"). Accordingly, the Court declines to dismiss the superseding indictment on this basis either, so Mr. Forbes' motion to dismiss is DENIED.

**B.     Mr. Forbes' Motion for a Bill of Particulars**

Mr. Forbes next moves for a bill of particulars, asking the government to "particularize the specific date of the drug crime that is alleged to have been furthered by a firearm" and to "particularize how and in what manner the firearm allegedly furthered the drug crime." [DE 48]. The government responded by arguing that the superseding indictment adequately apprises Mr. Forbes of the charges against him, and that even if it did not, the information the government has provided in discovery and through its statements to the Court have filled any gaps. In his reply brief, Mr. Forbes argues that the problem is not so much that he does not know what he is charged with having done, but that he does not know which of the two (or more) charged drug trafficking crimes provide the predicate for the § 924(c) count. The superseding indictment charges five drug trafficking offenses, any of which could theoretically be the predicate for a § 924(c) count, but Mr. Forbes focuses on two of them: the September 10 transaction, during which he allegedly stated he would "reach under his seat" if the purchaser left without paying him, and the October 30 transaction, after which a gun was found in the same residence in which

the transaction took place. Mr. Forbes argues that the government can only seek to establish one of these as the crime that was allegedly furthered by his possession of a firearm, but that without knowing which, he cannot prepare his defense, thus requiring a bill of particulars.

Though Mr. Forbes does not expressly frame his argument in this manner, the Court interprets Mr. Forbes as arguing that the § 924(c) count is duplicitous, at least as the government intends to prove it, and that the remedy for that duplicitousness is for the government to declare through a bill of particulars which predicate offense it intends to pursue at trial. Mr. Forbes is correct that each of the separate drug trafficking crimes could constitute separate § 924(c) offenses if they were each furthered by his possession of a firearm. *United States v. Cejas*, 761 F.3d 717 (7th Cir. 2014) (upholding convictions on separate § 924(c) counts for possessing the same gun in furtherance of two separate drug transactions). That does not necessarily mean that the government cannot charge those offenses in the same count, however—as the Seventh Circuit noted in *United States v. Buchmeier*, "just because we find that the facts of this case permitted the government to charge Buchmeier with three sets of counts, one for each transaction, does not mean that it was required to do so." 255 F.3d 415, 423 (7th Cir. 2001); *see United States v. Dickerson*, 705 F.3d 683, 687 (7th Cir. 2013) (noting, without commenting on any duplicity concerns, that the § 924(c) count charged two separate predicate offenses). Given the severe consequences that could follow from charging multiple § 924(c) counts (mandatory consecutive sentences of at least 25 years each), the government may have exercised its prosecutorial discretion in combining these separate offenses into a single charge. In that event, the answer to Mr. Forbes' question as to which predicate offense he has to defend against could be "both."

Neither party has directly addressed these issues in their briefs, however, so there are some unresolved questions, such as whether it would be proper for the government to include these multiple separate offenses under the same count, and whether any duplicity could be cured by a specific unanimity jury instruction, for example, so that the jury could not convict Mr. Forbes without unanimously agreeing that he possessed a firearm in furtherance of any one drug trafficking crime, *see Buchmeier*, 255 F.3d at 425 (collecting cases), or whether the government must elect which predicate offense to pursue at trial. Accordingly, the Court takes this motion under advisement, and requests that both parties be prepared to discuss these issues at the final pre-trial conference.

Barring any duplicity issues, though, there is no question that Mr. Forbes has received adequate notice that the government intends on pursuing multiple underlying drug offenses as the predicates for the 924(c) count. The superseding indictment contains each of the elements of the charged offense and puts Mr. Forbes on notice of the predicate offenses the government intends to prove. Further, the government had no objection to, and in fact argued in support of, the Court's proposed jury instruction that identified the 5 charged drug transactions as the drug trafficking crimes that were furthered by Mr. Forbes' possession of a firearm [DE 26], which essentially answers Mr. Forbes' first request for a bill of particulars. The government also proposed a jury instruction in support of its argument as to how the firearm furthered Mr. Forbes' drug trafficking [DE 36], which largely answers his second request. The government has also discussed at considerable length the evidence it intends to offer, why that evidence should be admitted, and how that evidence supports its case. Therefore, unless it is required as a remedy for any duplicity in Count 6, a bill of particulars is not otherwise warranted.

## C. The Government's Motion to Amend the Indictment

Finally, the government has orally moved to amend Count 8 of the superseding indictment to correct the year of the alleged offense. The superseding indictment charges Mr. Forbes with witness tampering "in or around the spring/summer of 2013," though the government acknowledges that this offense allegedly occurred in 2014, so it asks to amend the indictment accordingly. As a general rule, "only the grand jury can materially amend a criminal indictment." *United States v. Smith*, 993 F.2d 1550, at *3 (7th Cir. 1993) (table). Unless a date is an element of the charged offense, though, changing a date does not constitute a material amendment to an indictment. *Id.* at *4 ("Changing the dates in the indictment corrected a harmless error and did not deprive [the defendant] of an opportunity to adequately prepare a defense."); *see United States v. Dickerson*, 705 F.3d 683, 693–94 (7th Cir. 2013); *United States v. Cina*, 699 F.2d 853, 859 (7th Cir. 1983). In fact, when "the date is not an essential or material element of the charged offense, 'it is generally sufficient to prove that the offense was committed on any day before the indictment and within the statute of limitations.'" *Dickerson*, 705 F.3d at 694. Thus, except when such variances prejudice a defendant's ability to present his defense, an amendment may be amended to correct clerical errors as to its dates. *Id.*; *United States v. Leichtnam*, 948, F.2d 370, 376 (7th Cir. 1991) ("An indictment may be modified, either physically or constructively . . . to correct for a typographical or clerical error or a misnomer. In addition, unless the particular date is an important element of the charged offense, a formal change to the date specified in the indictment . . . will not impermissibly amend the indictment . . . ." (citations omitted)); *Cina*, 699 F.2d at 859 (approving of a clerical amendment to the dates in the indictment).

Here, the date of the witness tampering charge is not a material element of the offense, and the date of the offense that the government intends to prove at trial occurred before the date

13

the grand jury returned the indictment and within the statute of limitations periods. Further, Mr. Forbes will not be prejudiced by correcting the date specified in the indictment. The government has made clear that the alleged witness tampering took place after Mr. Forbes' arrest in this matter (in October 2013), so it had to have taken place in the spring or summer of 2014, not 2013. The government has also identified the specific conduct at issue, namely, that Mr. Forbes asked a particular individual to claim the gun was hers, and has apparently produced a recording of that conversation, so there is no doubt about what conduct serves as the basis for this crime, let alone the timeframe of that conduct. Further, as Mr. Forbes' counsel has acknowledged, the discovery the government has provided all pertained to 2014, and counsel was always under the impression that the government intended to prove that the offense took place in 2014. Therefore, the Court GRANTS the government's motion, and amends Count 8 of the superseding indictment to replace "2013" with "2014."

**D.     Conclusion**

The Court DENIES Mr. Forbes' motion to dismiss [DE 47] and takes his motion for a bill of particulars [DE 48] under advisement. The government's oral motion to amend the superseding indictment is GRANTED, and the Court amends the superseding indictment to replace "2013" in Count 8 with "2014."

SO ORDERED.

ENTERED:   October 8, 2014

/s/ JON E. DEGUILIO
Judge
United States District Court